UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE  DIVISION


ROBERT J. TARRH and DONNA TARRH,   )
        Plaintiffs,   )
        )
    vs.   )        2:04-cv-0094-LJM-WGH
        )
STATE FARM FIRE AND CASUALTY   )
COMPANY and L.E. FRAZIER,   )
        Defendants.   )


**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment brought by defendants,

State Farm Fire and Casualty Company ("State Farm") and Mr. L.E. Frazier, doing business as L.E.

Frazier Insurance (collectively, "Defendants"), against the claims of plaintiffs, Mr. Robert J. Tarrh

("Robert") and Mrs. Donna Tarrh ("Donna") (collectively, "Plaintiffs").  Plaintiffs' action against

Defendants' is brought under diversity and based on an alleged breach of contract.  The parties have

fully briefed their arguments, and the motion is now ripe for ruling.


**I.  FACTUAL BACKGROUND**

L.E. Frazier[1] is an authorized agent of State Farm and was the agent responsible for procuring

several insurance policies for Plaintiffs, including two automobile policies and a homeowner's policy

---

[1]As explained in this Court's Order dated November 18, 2004, jurisdiction over L.E.
Frazier is proper, even though he is an Indiana citizen, because this case was properly removed
from Indiana state court before a cognizable claim against L.E. Frazier was proffered by
Plaintiffs. *See* November 18, 2004 Order Granting Defendants' Motion to Dismiss and Granting
Plaintiffs' Motion for Leave to Amend, at 9.

on Plaintiffs' Terre Haute residence. L.E. Frazier Aff. ¶¶ 1, 2. When L.E. Frazier procured these policies, Plaintiffs authorized him to remove the premium payments from their checking account automatically every month. *Id.* ¶ 3. This monthly automatic removal of premiums occurred between February of 2000 and September of 2002. *Id.* ¶ 4.

Plaintiffs' Terre Haute residence was the subject of a home mortgage serviced by Fairbanks Capital Corp., now known as Select Portfolio Servicing, Inc. ("Fairbanks"). Fairbanks Aff. ¶ 3. According to the terms of the mortgage, Plaintiffs were required to keep a homeowner's insurance policy on the premises in full force. *Id.* ¶ 4. The Plaintiffs had been customers of L.E. Frazier Insurance since about 1992. *See* Donna Tarrh Aff. ¶ 5. According to Plaintiffs, in October of 2002, L.E. Frazier turned over Plaintiffs' policies to his employee and brother, Mr. Bob Frazier. *Id.* However, L.E. Frazier asserts that client accounts were never wholly assigned to anyone in particular in his office, and Bob Frazier's particular functions included calling clients who were having payment problems. L.E. Frazier Supp. Aff. ¶ 2. Bob Frazier's other job duties included selling fire insurance policies, quoting homeowner's insurance premiums, and entering information into the company's computer system. Bob Frazier Dep. at 13-14. If Bob Frazier was unable to enter payment information into the computer system, he would give the paying clients handwritten receipts. *Id.* at 23.

On October 10, 2002, State Farm attempted to automatically remove $158.30 from Plaintiffs' checking account for payment of their October premiums. *See* L.E. Frazier Aff. ¶ 5. On November 4, this payment was returned by the Plaintiffs' bank due to insufficient funds. *Id.* ¶ 6. On November 14, Ms. Deborah Hill ("Hill"), an employee of L.E. Frazier's, called Plaintiffs and informed them that the October and November premium payments remained unpaid, the November payment having

been due on November 10.  *Id.* ¶ 7.  Plaintiffs were also informed that the automobile policies were cancelled as of November 4 and the homeowner's policy was cancelled as of November 6.  *Id.*

On November 18, 2002, Plaintiffs paid $158.30 in cash for the unpaid October premiums. *Id.* ¶ 8.  On November 20, Bob Frazier called Plaintiffs and informed them that their November premiums had yet to be paid, and if they remained unpaid the policies would again be cancelled.  *Id.* ¶ 9.  On December 10, State Farm attempted to automatically remove $258.87 from Plaintiffs' checking account for their November and December premiums.  *See id.* at 10.  On December 18, this payment was returned by Plaintiffs' bank due to insufficient funds.  *Id.* at 11.

Plaintiffs assert that, on December 11, 2002, the day their insurance policy was to be renewed, they informed Bob Frazier that they wanted to change their homeowner's insurance policy. Donna Tarrh Aff. ¶ 6.  The policy was to be changed so that premium payments would be made on a semiannual basis, rather than monthly, and the automatic withdrawal of insurance premiums from their checking account would be cancelled.  *Id.*  Plaintiffs also informed Bob Frazier that the automatic withdrawal method of payment was resulting in insufficient funds because State Farm's timing of the withdrawals occurred before the timing of Plaintiffs' direct deposits.  Donna Tarrh Aff. ¶ 6.  During this alleged conversation, Bob Frazier told Plaintiffs that the agency computers were not working properly.  *Id.* ¶ 8.  Still, Bob Frazier told the Plaintiffs that their homeowner's insurance policy would have an annual premium of $600.00, or a semiannual premium of $300.00.  *Id.*  The $300.00 semiannual premium was to be due that day if Plaintiffs wanted to have their renewed homeowner's insurance policy in effect that day.  *Id.*  In response, Donna paid Bob Frazier $300.00 cash on December 11, 2002.  *Id.* ¶ 9.  Bob Frazier provided her with a hand-written receipt of this cash payment.  *Id.* ¶ 10.  Defendants assert, however, that none of this could have occurred because

3

Bob Frazier was not working on December 11.  L.E. Frazier Supp. Aff. ¶ 3; L.E. Frazier Supp. Aff.

Ex. A.  Defendants further assert that there is evidence of neither the receipt nor the $300.00 cash

in L.E. Frazier Insurance's records or cashbook.  L.E. Frazier Supp. Aff. ¶¶ 6, 7; L.E. Frazier Supp.

Aff. Exs. D, E.

On January 3, 2003, Plaintiffs' homeowner's policy was cancelled for nonpayment of

premiums.  L.E. Frazier Aff. ¶ 12; Defs. Br. Ex. 3 Ex. A; Fairbanks Aff. ¶ 5.  Plaintiffs were notified

of the January 3, 2003, cancellation date on December 19, 2002.  *See* Defs. Br. Ex. 3. Ex. A at 3.

Donna asserts that she called Bob Frazier to ask why the insurance policy was cancelled in light of

the $300.00 cash payment on December 11; Bob Frazier said he would look into it.  Donna Tarrh

Aff. ¶ 13.  On February 7, 2003, Plaintiffs paid $270.90 by check to L.E. Frazier Insurance; L.E.

Frazier states that this check was presented under instructions that it be credited only to the

automobile policies.  L.E. Frazier Aff. ¶ 13.  *See* Donna Tarrh Aff. Ex. 2.  Defendants allege that this

money was paid to Hill.  L.E. Frazier Aff. ¶ 13.  Plaintiffs allege that it was paid to Bob Frazier

following a conversation in which Bob Frazier told Plaintiffs that their homeowner's insurance

policy had been cancelled because he misquoted their semiannual policy at $300.00, rather than at

$570.90.  Donna Tarrh Aff. ¶ 13.  Plaintiffs then agreed to pay the difference to reinstate their

homeowner's insurance.  *Id.*  However, Defendants assert that this was not possible because Bob

Frazier did not work on February 7.  L.E. Frazier Supp. Aff. ¶ 4; L.E. Frazier Supp. Aff. Ex. B.

On February 11 and again on February 13, an employee of L.E. Frazier called and wrote

Plaintiffs to inform them that their homeowner's insurance policy remained cancelled.  L.E. Frazier

Aff. ¶¶ 14, 15.  On February 19, notices that Plaintiff's automobile policies were reinstated were

distributed by Defendants.  L.E. Frazier Supp. Aff. ¶ 8.  On February 24, Donna asserts that she

4

called Bob Frazier and requested that he fax Fairbanks a notice showing that the homeowner's insurance policy had been reinstated pursuant to the February 7 payment. Donna Tarrh Aff. ¶ 15. Although Defendants assert that Bob Frazier did not work on February 24, L.E. Frazier Supp. Aff. ¶ 5; L.E. Frazier Supp. Aff. Ex. C, Fairbanks says that it received this fax on February 24 and, subsequently, dropped its lender's insurance. Fairbanks Aff. ¶¶ 6, 9; Fairbanks Aff. Ex. B. Fairbanks confirmed these actions by letter to Plaintiffs on February 28. Fairbanks Aff. ¶ 10; Donna Tarrh Aff. ¶ 17; Fairbanks Aff. Ex. C.

On May 2, 2003, a fire occurred at Plaintiffs' Terre Haute residence. Subsequently, Plaintiffs filed an insurance claim, which was denied by State Farm. L.E. Frazier Aff. ¶ 16. State Farm denied Plaintiffs claim because their homeowner's insurance had been cancelled before May 2, 2003, without reinstatement, due to nonpayment of premiums. *Id.*

## II.  SUMMARY JUDGMENT STANDARDS

As stated by the Supreme Court, summary judgment is not a "disfavored procedural shortcut, but rather [is] an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Rule 56©) of the Federal Rules of Civil Procedure, which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to [her] case,

one on which [she] would bear the burden of proof at trial, summary judgment must be granted to

the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).  Further, the

nonmovant will not defeat summary judgment merely by pointing to self-serving allegations without

evidentiary support.  *See Cliff v. Bd. of Sch. Comm'rs*, 42 F.3d 403, 408 (7th Cir. 1994).


## III.  DISCUSSION

In their amended complaint, Plaintiffs allege that State Farm and L.E. Frazier independently

breached the contract[2] with Plaintiff, breached their duties of notice of cancellation, and breached

their duties to inform the Plaintiffs of the correct amount of insurance premiums due.  Plaintiffs also

allege that L.E. Frazier negligently failed to apply insurance payments, negligently failed to obtain

insurance coverage, negligently failed to notify Plaintiffs that the homeowner's policy had been

cancelled, and illegally converted insurance premiums.  Plaintiffs further allege that Defendants

acted in bad faith in the adjustment of the fire loss claim.


### A.  WHETHER THE INSURANCE POLICY WAS IN FORCE ON MAY 2, 2003

In an action against an insurer to recover for fire loss, Plaintiffs bear the burden of

establishing a prima facie case establishing an insurance contract, a fire, and damages.  *See Dean v.*

---

[2]As this case is brought under diversity jurisdiction, state law governs the substantive issues.  *See Goetzke v. Ferro Corp.*, 280 F.3d 766, 779 (7th Cir. 2002).  Indiana courts interpret contracts using the "four corners" approach.  *See Evans v. Med. & Prof'l Collection*, 741 N.E.2d 795, 797-98 (Ind. Ct. App. 2001).  Interpretation of terms in an insurance policy is a question of state contract law.  *Erie Ins. Group v. Sear Corp.*, 102 F.3d 889, 892 (7th Cir. 1996) (citing *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992)).  A question of fact as to interpretation of insurance policies exists only when extrinsic evidence is required to resolve an ambiguity.  *See Tate*, 587 N.E.2d at 668.

*Ins. Co. of N. Am.*, 453 N.E.2d 1187, 1193 (Ind. Ct. App. 1983). That Plaintiffs suffered significant damages due to the May 2 fire is undisputed. However, Defendants assert that no cause of action for breach of contract can proceed because there was no insurance policy in full force and effect at the time of the loss. Defs. Br. at 8.

According to Defendants, Plaintiffs never paid their November or December 2002 insurance premiums. On December 10, 2002, Defendants attempted to remove these payments—totaling $258.87—from Plaintiffs' checking account, but were unable to because the account had insufficient funds. L.E. Frazier Aff. ¶¶ 10, 11. Without addressing these unpaid November and December premiums, Plaintiffs assert that they renewed their homeowner's policy by paying $300.00 cash to Bob Frazier, who apparently did not think to ask them about their delinquent payments. Donna Tarrh Aff. ¶ 9.

According to Plaintiffs, Bob Frazier was familiar with their account. *See id.* ¶ 5. About two weeks before they claim to have renewed their policy, Bob Frazier called Plaintiffs about their unpaid premiums. L.E. Frazier Aff. ¶ 8. Defendants agree that Bob Frazier was an employee who regularly dealt with delinquent payees. *See* L.E. Frazier Supp. Aff. ¶ 2. Plaintiffs also claim that they received a handwritten receipt from Bob Frazier for their $300.00 renewal payment, Donna Tarrh Aff. ¶ 10, yet they do not offer this receipt (or an explanation of its absence) as evidence.

Defendants, on the other hand, offer three pieces of evidence that directly contradict Plaintiffs assertions. First, Defendants have evidence that Bob Frazier was not at work on December 11; therefore, he could not have quoted them a price for a new policy, nor could he have accepted their payment. L.E. Frazier Supp. Aff. Ex. A. Second, Defendants have offered their records of all receipts for the relevant time frame; no receipt for December 11 is shown. L.E. Frazier Supp. Aff.

Ex. D.  Third, Defendants have offered their cashbook records from the relevant time frame; there is no recording of a $300.00 payment.  L.E. Frazier Supp. Aff. Ex. E.  As a result, there is a factual issue over whether or not Plaintiffs made the $300.00 payment.

On January 3, 2003, Defendants cancelled Plaintiffs' policies for nonpayment.  L.E. Frazier Aff. ¶ 12; Defs. Br. Ex. 3 Ex. A; Fairbanks Aff. ¶ 5.  On February 7, 2003, Plaintiffs paid $270.90 by check to L.E. Frazier Insurance.  *See* Donna Tarrh Aff. Ex. 2 (check "for insurance").  Defendants allege that this money was paid to Hill with the instructions that it be applied only to the car insurance premiums.  L.E. Frazier Aff. ¶ 13.  Plaintiffs allege that it was paid to Bob Frazier with the understanding that he misquoted their semiannual policy on December 11 at $300.00, rather than at $570.90.  *See* Donna Tarrh Aff. ¶ 13.  Plaintiffs assert that they then agreed to pay the difference to reinstate their homeowner's insurance. *See id.*        There also exists genuine questions of material fact as to whether the February 7 check was intended to be and was in fact applied to Plaintiffs' homeowner's insurance policy.

On both February 11 and February 13, Defendants called and wrote Plaintiffs to inform Plaintiffs that the homeowner's insurance policy remained cancelled.  L.E. Frazier Aff. ¶¶ 14, 15.  Plaintiffs do not dispute these notices.  However, on February 24, Donna asserts that she called Bob Frazier and requested that he fax Fairbanks a notice showing that the homeowner's insurance policy had been reinstated pursuant to the February 7 check payment.  Donna Tarrh Aff. ¶ 15.  While Defendants attempt to demonstrate that Bob Frazier did not work on February 24, L.E. Frazier Supp. Aff. Ex. C, regardless, Fairbanks received this fax on February 24 and, subsequently, dropped its lender's insurance on the Terre Haute property.  Fairbanks Aff. ¶¶ 6, 9; Fairbanks Aff. Ex. B.  *See* Pl. Br. at 9.  The February 24 fax states that a homeowner's policy over the Terre Haute residence

was in effect for the period beginning on December 11, 2002, and ending on December 11, 2003. Fairbanks Aff. Ex. B.  Fairbanks confirmed the receipt of the February 24 fax and the cancellation of lender's insurance by letter to Plaintiffs on February 28.  Fairbanks Aff. ¶ 10; Donna Tarrh Aff. ¶ 17; Fairbanks Aff. Ex. C.

In light of the Plaintiffs' documented payments to L.E. Frazier Insurance and the February 24 fax from L.E. Frazier Insurance to Fairbanks, this Court finds a genuine question of material fact as to whether Plaintiffs' homeowner's insurance policy was in full force and effect during the relevant time period.[3]  Defendants' Motion for Summary Judgment on this issue must be **DENIED**.

**B. WHETHER L.E. FRAZIER CAN BE SUED FOR BREACH OF CONTRACT**

Defendants argue that L.E. Frazier was not a party to the insurance contract between State Farm and Plaintiffs, and therefore L.E. Frazier cannot be sued for any duties or obligations originating from the contract.  Defs. Br. at 8.  As further noted by the Defendants in their Reply, Plaintiffs do not dispute this contention.  Defs. Reply at 4.  This Court generally agrees with the Defendants that, insofar as a contract may exist as noted in section III.A, supra, L.E. Frazier cannot be held liable under that contract according to Indiana law because L.E. Frazier was not a party to the contract.  *Cf. Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878-79 (7th Cir. 1999) (dismissing claim of bad faith against insurance agent under Indiana law because the agent was not

---

[3]Plaintiffs spend a significant portion of their brief discussing the use of promissory estoppel against Defendants.  Although Plaintiffs do not make clear that this argument is offered in the alternative to a finding of a genuine question of material fact on the existence of the homeowner's insurance policy, given this Court's finding of a question of material fact on the contract issue, the issue of promissory estoppel will not here be addressed.  *Compare Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1001 (7th Cir. 2000) *with* Pls. Br. at 9 *and* Pls. Br. at 12.

in privity with the insureds based on the insurance policy; therefore the agent owed no special duties

to the insureds).[4]

Defendants' Motion for Summary Judgment on the issue that L.E. Frazier cannot be sued for

breach of contract, assuming the existence of an insurance contract, must be **GRANTED**.


### C.  WHETHER L.E. FRAZIER ACTED NEGLIGENTLY

To the extent that the contract discussed in section III.A is found not to exist, Plaintiffs allege

that L.E. Frazier negligently failed to obtain the agreed upon insurance coverage, negligently failed

to notify Plaintiffs that their insurance policy was cancelled, and negligently failed to apply insurance

payments.  Pls. Am. Compl. ¶¶ 7-9.  However, these allegations pertain only to the alleged $300.00

payment of December 11, 2002.  *Id.*  As discussed above, Plaintiffs have not met their burden to

refute Defendants' evidence that the $300.00 payment did not occur; as such, no claim that the

$300.00 payment was negligently handled can be maintained.

Plaintiffs also generally allege that Defendants are liable for breach of their duties to provide

Plaintiffs with notice of the policy cancellation, abide by the offer of purchase Defendants made to

Plaintiffs in quoting Plaintiffs an insurance premium, and for failure to abide by the contract.  *Id.* ¶¶

---

[4]Plaintiffs cite *United Farm Bureau Mutual Insurance Company v. Cook*, 463 N.E.2d 522, 527 (Ind. Ct. App. 1984), for the proposition that L.E. Frazier may be held liable for breach of contract.  However, this Court believes that Plaintiffs have misread the case law.  While it is true that the *Cook* court states, "[i]f the agent undertakes to procure the insurance and through fault and neglect fails to do so, the agent or broker may be liable for breach of contract or for negligent default in the performance of a duty imposed by contract," *id.*, this Court interprets the referenced contractual relationship as one between the agent and the insured, and not the contractual relationship between the insurer and the insured.  Should the agent breach his or her independent contract with the insured, the agent can be sued for breach of contract; in the alternative, the agent can be sued for negligence.  Plaintiffs do not present any evidence of an independent agency contract.

18-20. *See* Pls. Br. at 9, 12-13. These last two arguments go to the existence of the contract and its alleged breach, and are therefore not readdressed in this section. However, the argument that Defendants have breached their duty to provide notice of cancellation does go to negligence. According to Indiana law, to premise a recovery on a theory of negligence, Plaintiffs

> must establish three elements: (1) a duty on the part of [Defendants] to conform [their] conduct to a standard of care arising from [the] relationship with [Plaintiffs], (2) a failure of the [Defendants] to conform their conduct to the requisite standard of care . . . and (3) an injury to the [Plaintiffs] proximately caused by the breach.

*Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991). The existence of a duty is generally a question of law; whether this duty was breached is, under Indiana law, a question of fact. *See Beckom v. Quigley*, 824 N.E.2d 420, 424 (Ind. Ct. App. 2005). An insurance agent is generally obliged to a standard of care to exercise "reasonable care, skill, and good faith diligence in obtaining insurance." *Craven v. State Farm Mut. Auto. Ins. Co.*, 588 N.E.2d 1294, 1296 (Ind. Ct. App. 1992).

When assessing the existence of a duty under Indiana law, this Court must consider "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy." *Webb*, 575 N.E.2d at 995. Since Plaintiffs' negligence claim is premised on the contract's existence and subsequent cancellation, this Court finds that each of these elements is satisfied and, accordingly, the Defendants had a duty to exercise reasonable care, skill, and good faith diligence in notifying the Plaintiffs of the cancellation.

Although Indiana law stipulates that the issue of whether a duty was breached is generally a question of fact, the standard for deciding whether summary judgment is appropriate before this Court is a matter of federal law. *See Jean v. Dugan*, 20 F.3d 255, 262-63 (7th Cir. 1994). With that in mind, Defendants have presented ample and undisputed evidence showing that they repeatedly

notified Plaintiffs of their delinquent payments and cancelled insurance policies between November 2002 and February 2003, and that Plaintiffs acknowledged and responded to these notices. *See* L.E. Frazier Aff. ¶¶ 7-9, 14-15; Defs. Br. Ex. 3 Ex. A at 3; Donna Tarrh Aff. ¶¶ 13, 15; Fairbanks Aff. ¶¶ 6, 9; Fairbanks Aff. Ex. B. This evidence demonstrates Defendants' reasonable care, skill, and good faith diligence to notify the Plaintiffs of the cancellation. As such, any claim that Defendants breached their duty to notify Plaintiffs of the cancelled insurance policies within this time frame must be rejected.

However, as discussed in section III.A, Plaintiffs' have established a genuine question of material fact as to whether they effectively reinstated their homeowner's policy in February 2003, as evidenced by the February 24 fax from L.E. Frazier Insurance to Fairbanks. If a jury finds that Defendants were obliged on such a policy as of February 24, then any subsequent cancellation of the policy would have been without notice. It is undisputed that the February 24 communications between Plaintiffs and Defendants were the final communications until the May 2 fire. As such, it remains an open question whether Defendants negligently failed to notify Plaintiffs of a post-February 24 cancellation, if there was a policy to cancel at that time. It also remains an open question whether this supposed failure to notify would have proximately caused Plaintiffs' injury, which Defendants generally deny. *See* Defs. Reply at 8.

Plaintiffs also argue that L.E. Frazier had a duty to advise them about their insurance agreement, which, Plaintiff's assert, he also neglected. Pls. Br. at 9, 12-13. In Indiana, "the agent's duty extends to the provision of advice only upon a showing of an intimate long term relationship between the parties or some other special circumstances." *Craven*, 588 N.E.2d at 1297. As the undisputed evidence shows that Plaintiffs had a ten year relationship with L.E. Frazier, this Court

13

finds that L.E. Frazier did have a duty to advise Plaintiffs. *See id.* However, evidence of their longstanding relationship aside, Plaintiffs offer no evidence to suggest that L.E. Frazier failed to advise them in any particular regard, other than the failure to notify already discussed. *See* Pls. Br. at 9. As such, Plaintiffs cannot maintain this theory of negligence.

For the above stated reasons, Defendants' Motion for Summary Judgment on the issue of L.E. Frazier's negligence must be **GRANTED in part and DENIED in part**.

### D.  WHETHER L.E. FRAZIER COMMITTED CONVERSION

The parties dispute whether a $300.00 payment was made to the agency by Plaintiffs in response to a statement from a representative of the agency asserted that the premium due to reinstate the policy was $300.00. Defendants offer evidence that no such payment was made and Plaintiffs explain their later payment of $270.00 by asserting that this amount, when added to the $300.00, amounted to the correct premium necessary to reinstate the policy. If the finder of fact believes Plaintiffs, the Conversion count would stand. Defendants' Motion for Summary on the conversion count must be **DENIED**.

### E.  WHETHER L.E. FRAZIER CAN BE SUED FOR BAD FAITH

Fraizer himself cannot be sued for bad faith. See *Schwartz*, 174 F.3d at 878-79. Defendants' Motion For Summary Judgment on this issue must be **GRANTED**.

### F.  WHETHER THERE WAS BAD FAITH BY STATE FARM

Plaintiffs have presented enough issues of fact to cause this Court to **DENY** the Motion for

Summary Judgment on this issue.

### G.  WHETHER PLAINTIFFS CAN RECOVER PUNITIVE DAMAGES

The evidence that would support a conversion claim, deliberately and intentionally taking money from Plaintiffs knowing that the money will not be used for the purpose agreed to, could support a finding of punitive damages.  Defendants' Motion for Summary Judgment on this issue must be **DENIED**.

### IV.  <u>CONCLUSION</u>

For the foregoing reasons, defendants', State Farm Fire and Casualty Company and Mr. L.E. Frazier, doing business as L.E. Frazier Insurance, Motion for Summary Judgment is **GRANTED in part and DENIED in part**.

IT IS SO ORDERED this 12th day of August, 2005.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Dennis F. Cantrell
BINGHAM MCHALE, LLP
dcantrell@binghammchale.com

William W. Drummy
WILKINSON GOELLER MODESITT
    WILKINSON & DRUMMY
wwdrummy@wilkinsonlaw.com

Anna E. Muehling
BINGHAM MCHALE, LLP
amuehling@binghammchale.com

Mary Lou Reynolds
mreynoldslaw@aol.com